IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:18-CR-18-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JOHN JAMES TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court for resentencing April 8, 2026, following third remand from the United States Court of Appeals for the Fourth Circuit. The court memorializes herein reasons for imposing modest increase of three months to defendant's custodial sentence during the latest remand hearing.

**BACKGROUND**

The serial remands in this matter are based on inconsistencies in the court's oral pronouncements of defendant's supervised release conditions and the conditions set forth in the written judgment. Such errors are known in this circuit as "Rogers/Singeltary" errors based on the case names that gave rise to this doctrine.[1] Currently, the remedy for these errors is that defendant receives a full resentencing hearing.

In January 2019, defendant pleaded guilty to possession with intent to distribute a quantity of cocaine and a quantity of heroin, and unlawful possession of a firearm. During the original sentencing in May 2019, the court sentenced defendant to aggregate term of 170 months' imprisonment and three years' supervised release. Defendant appealed, and the parties filed

---

[1]    See United States v. Rogers, 961 F.3d 291 (4th Cir. 2020); United States v. Singletary, 984 F.3d 341 (4th Cir. 2021).

consent motion to remand for resentencing on the basis of discrepancies between the oral pronouncement of sentence and the conditions of supervised release in the written judgment. In particular, the court failed to pronounce orally two financial conditions in the written judgment: 1) the defendant shall not incur new credit charges or open additional lines of credit without approval of the probation office; and 2) the defendant shall provide the probation office with access to any requested financial information. (See DE 61-1 at 2).

The court proceeded to resentence defendant June 14, 2022. During this proceeding, the court explained its standard procedure for resentencing hearings: "so the way I usually start is I turn to the probation office and I say: tell me about the defendant's conduct while in prison" since the first sentencing. (DE 78 at 2). Discussion then ensued regarding defendant's payment of the special assessment, participation in educational courses, and his two disciplinary infractions. (Id. at 2–4, 9). After defendant reported that he was participating in drug treatment and other rehabilitative efforts, the court responded:

> I'm pleased you listened. Not everybody listens. It's frankly very satisfying for me when I resentence somebody to hear them remind me what I said to them and to tell me that they've listened and done it, and to show me that. You know, words are one thing. But that's, to me, a very satisfying part of being a judge.

(Id. at 9). During counsel's argument for a reduced sentence, she emphasized that defendant's allocution regarding his rehabilitative efforts reflects "how he's evolving in the Bureau of Prisons." (Id. at 14–15). Ultimately, the court reduced the custodial sentence by six months to account for these efforts, producing a new sentence of 164 months' imprisonment and three years' supervised release.

Defendant appealed again, and the parties again filed joint motion to remand for resentencing in light of Rogers/Singletary errors. This time, while the court made reference to the "standard conditions" in this district and summarized same, it did not read the standard conditions

2

verbatim or sufficiently incorporate by reference Standing Order 21-SO-5 which sets forth those conditions.  (See DE 79-1).

Moving now to the third attempt at sentencing, held May 9, 2024, the court reimposed the same sentence of 164 months' imprisonment and three years' supervised release.  As in the second hearing, the court began the third hearing by seeking information from the probation officer regarding defendant's behavior in custody.  (DE 92 at 2).  Unfortunately, this time defendant had failed to show improvement with respect to violating prison rules, as he received three new disciplinary infractions: two counts of engaging in a sexual act and one count of refusing work assignment.  (Id. at 2–3).  The court again engaged in a discussion with defendant regarding the infractions, highlighting specifically the court's concerns with this continued problematic behavior, which included exposing himself to Federal Bureau of Prisons ("FBOP") employees.  (Id. at 5–8, 10–11).  Despite these new infractions, the court maintained the same sentence as previously imposed.

With respect to the conditions of supervised release, the court incorporated by reference Standing Order 21-SO-5, and orally pronounced various "special" conditions of supervised release.  (Id. at 13, 16–17).  Relevant here, when explaining the special condition regarding mental health treatment, the court stated, "I want you to have mental health treatment, if the probation office and you think that would be helpful, as directed by the probation office."  (Id. at 17).  For purposes of the written judgment that is entered after sentencing, the court drafted the following language for the mental health condition: "the defendant shall participate in a program of mental health treatment, as directed by the probation office."

In an effort to conform the written judgment to the oral pronouncement, the court emailed the parties the draft written conditions, and requested their positions on whether these conditions

3

reflect the oral pronouncement of the sentence.  See United States v. Taylor, No. 24-4265, 2026 WL 49566, at *1 (4th Cir. Jan. 7, 2026).  Through counsel, both parties responded in the affirmative.  See id.  Accordingly, the final special condition in the written judgment reflected this agreed-upon language: "the defendant shall participate in a program of mental health treatment, as directed by the probation office."  (DE 85 at 6).

Notwithstanding the foregoing, defendant appealed and argued that the court committed reversible Rogers/Singletary error.  Defendant argued that both the mental health and warrantless search conditions in the judgment were inconsistent with the oral pronouncement of sentence.  The court of appeals agreed as to the mental health condition,[2] stating as follows:

> At the sentencing hearing, the district court ordered Taylor to participate in mental health treatment if he thought it "would be helpful." In contrast, the written judgment requires Taylor to participate in mental health treatment at the direction of the probation office. We conclude that this material discrepancy between the oral and written sentences amounts to plain error under Rogers and its progeny.

Taylor, 2026 WL 49566, at *2.[3]  As noted above, the remedy for this error was remand for defendant's fourth resentencing.  Id.

The court convened the instant fourth resentencing of defendant April 8, 2026.  Similar to the prior resentencing hearings, the court began the hearing by engaging in colloquy with defendant about his behavior while incarcerated since the most recent resentencing.  (Sent'g Tr. (DE 112) at 4).  In particular, the court raised concern that the serial appeals and travel back to New Bern for resentencing was disrupting defendant's ability to participate rehabilitative programs in the FBOP.  (Id. at 4).  Defendant acknowledged that he was scheduled to start the FBOP's

---

[2]     The Fourth Circuit did not reach defendant's arguments regarding the warrantless search condition.

[3]     Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

4

residential drug abuse program ("RDAP")[4] before he was transferred back to local custody in North Carolina for the instant proceeding, although he indicated that FBOP officials told him he likely could begin RDAP upon his return.  (Id. at 4).

With respect to his disciplinary history, and despite the court's statements at two prior hearings that defendant's behavior in custody is an important factor in determining the sentence on remand, defendant continued to engage in prohibited sexual acts.  Specifically, he was caught masturbating in front of female staff members in an activity room.  (Id. at 9–10).  Defendant, nonetheless, requested that the court reimpose the same custodial sentence of 164 months where defendant was sanctioned with loss of good time credit for his sexually based infractions and he continued to participate in various rehabilitative programs during the most recent period in custody.

The court imposed a sentence of 167 months' imprisonment and three years' supervised release.  As discussed further below, the court added three months to the custodial sentence on the basis of defendant's continued infractions in FBOP custody, together with defendant's lengthy and disturbing criminal history and the offense conduct in this case.  As to supervised release, the court incorporated by reference the mandatory conditions set by statute and the standard conditions in Standing Order 21-SO-5, filed May 6, 2021.  With respect to special conditions, the court imposed requirements for drug treatment, mental health treatment, and vocational training, all as directed by the probation office.  Finally, the court ordered that defendant would be subject to warrantless searches upon the probation office's reasonable suspicion that defendant is violating a condition of supervised release or other unlawful conduct, or by the officer in the lawful discharge of the

---

[4]      RDAP is the FBOP's most intensive drug abuse treatment program.  See FBOP, Substance Abuse Treatment, https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp.

officer's supervisory functions.  Defendant's direct appeal of the fourth resentencing judgment remains pending.

## COURT'S DISCUSSION

A.      Defendant's Sentence

In imposing sentence in this matter, the court was mindful of two important principles governing federal sentencing.   The first is the baseline proposition that upon remand for resentencing, the court may impose "a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first [sentencing proceeding] that may have thrown new light upon the defendant."  North Carolina v. Pearce, 395 U.S. 711, 723 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989).  Thus,

> When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction. Similarly, when a defendant's sentence is set aside on appeal, the district court at resentencing can (and in many cases, must) consider the defendant's conduct and changes in the Federal Sentencing Guidelines since the original sentencing.

Concepcion v. United States, 597 U.S. 481, 486 (2022).

This principle is reinforced by the sentencing factors that must be considered pursuant to 18 U.S.C. § 3553(a).   Relevant here, the court must consider not only the "nature and circumstances of the offense" but the "history and characteristics of the defendant," and the need for the sentence imposed to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of defendant.  18 U.S.C. § 3553(a).  With the exception of the offense characteristics, a defendant's conduct since the prior sentencing hearing may be relevant to each of these factors.  See Concepcion, 597 U.S. at 48.

Second, defendants have a due process right to be free of what is known as "vindictive sentencing" upon remand from the court of appeals.  See United States v. Singletary, 75 F.4th 416,

423 (4th Cir. 2023) ("Singletary II"). When a case is remanded for resentencing, "[d]ue process . . . requires that vindictiveness against a defendant for having successfully attacked his first [sentence] must play no part in the sentence he receives" on remand. Pearce, 395 U.S. at 725. And "in order to assure the absence of [judicial vindictiveness]," the Supreme Court has established a rebuttable presumption of vindictiveness "whenever a judge imposes a more severe sentence upon a defendant" following successful appeal. Id. at 726; Singletary II, 75 F.4th at 424. The presumption is defeated, however, if the sentencing court "justif[ies] [its] increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original proceeding." Wasman v. United States, 468 U.S. 559, 572 (1984).

Here, the court increased defendant's sentence by three months relative to the third resentencing in May 2024. As discussed at the April 8 hearing, the court concluded that a more severe sentence was necessary in this case based on defendant's conduct in custody since the prior resentencing. (Sent'g Tr. (DE 112) at 22). Indeed, the court explained repeatedly to defendant that his behavior in custody would be a significant factor in any resentencing proceeding, and yet defendant nevertheless proceeded to masturbate in front a female FBOP officer after the court of appeals remanded for a fourth resentencing hearing. (See id. at 9–10 (government counsel explaining defendant was caught masturbating in May 2025, four months after the court of appeals' most recent opinion remanding this action); DE 78 at 2, 9 (court's prior explanation regarding significance of behavior in custody and rehabilitative efforts); DE 92 at 2, 5–8, 10–11 (same)). Moreover, this is defendant's third infraction for engaging in inappropriate sexual acts despite the court's repeated emphasis on his behavior in custody during the prior hearings and despite the fact that defendant received administrative punishments within the FBOP for these same infractions, including loss of good time credits. (Sent'g Tr. (DE 112) at 8–9, 18, 25). The additional infraction

7

prior to the April 8 hearing suggests defendant is unable or unwilling to control his sexual impulses even in a controlled institutional setting such as the FBOP, and the court found same justifies a modest increase of three months to the custodial sentence.

The court considered defendant's contrary arguments regarding the infraction history and his rehabilitative efforts in custody. While it is true that defendant committed only one infraction during this most recent period between resentencing hearings, it is the magnitude of that behavior together with the fact he continues to engage in it regardless of the serious consequences that warranted an increased sentence in this instance. And while the court commends defendant for his efforts at rehabilitation, including completing various educational or vocational training courses and attempting to enter inpatient drug treatment, the court determined, in the unique circumstances presented here, that the infraction overcomes these commendable rehabilitative efforts when balancing the relevant sentencing factors. Finally, the court notes that it did not reimpose the original sentence of 170 months' imprisonment, as requested by the government, based on the fact that defendant also lost significant amounts of good conduct time credit on the basis of these same infractions.

Based on the foregoing, and for the reasons stated at the April 8 resentencing hearing, the court imposed a custodial sentence of 167 months' imprisonment and three years' supervised release. The court found this sentence was sufficient, but not greater than necessary, to promote respect for the law, discourage defendant from continued criminal conduct, to protect the public from further crimes of defendant, and to account for the nature and circumstances of the instant offense, defendant's criminal history, and his infraction history in the FBOP.

B.     Rogers/Singletary Jurisprudence

The court takes this opportunity to provide the following comments regarding the various reversals and remands for resentencing that have occurred. Pursuant to Rogers and its progeny, "all non-mandatory conditions of supervised release must be announced at a defendant's sentencing hearing." 961 F.3d at 296; United States v. Bullis, 122 F.4th 107, 117 (4th Cir. 2024). In the event of a "material discrepancy between a discretionary condition as pronounced and as detailed in a written judgment," the defendant is entitled to vacatur of his sentence and remand for plenary resentencing. United States v. Mathis, 103 F.4th 193, 197 (4th Cir. 2024); United States v. Lassiter, 96 F.4th 629, 640 (2024).

In announcing the special conditions of supervised release during the third resentencing May 9, 2024, the court stated, "I want you to have mental health treatment, if the probation office and you think that would be helpful, as directed by the probation office." (DE 92 at 17). The court's intention was to provide the probation office with discretion to determine whether defendant would benefit from mental health treatment. Admittedly, whether due to a transcription error or simply a verbal misstatement, the transcript can be read to suggest that the court intended to give defendant an equal say in whether he would participate in mental health treatment. (See id.).

In the court's view, however, the phrase "as directed by the probation office" also can be read to suggest the probation office has discretion to determine whether mental health treatment is necessary, thereby creating a conflict with the phrase "if you . . . think it would be helpful."[5] And because the oral pronouncement was ambiguous on this point, the court provided both parties an opportunity to comment on the suggested language for the subsequently entered judgment. See

---

[5]     In the court's recollection, it has never announced a condition of supervised release allowing a defendant to determine for himself or herself the type of treatment required on supervised release.

9

Taylor, 2026 WL 49566, at *1; Mathis, 103 F.4th at 197 (recognizing that the "written judgment does not have to match perfectly with the oral pronouncement and that when an oral sentence is ambiguous the written judgment "may serve to clarify the sentence"). Counsel for both parties, present at the hearing, confirmed the court's understanding that it intended to provide discretion solely to the probation office to determine whether mental health treatment was necessary by agreeing to the condition as written in the judgment: "the defendant shall participate in a program of mental health treatment, as directed by the probation office." (DE 85 at 6).

Nonetheless, defendant filed appeal and argued against the construction his trial attorney agreed to. As a result, defendant won remand and the required remedy of plenary resentencing, and he was thus transported back to New Bern for resentencing. As described above, defendant then received a sentence three months longer than the sentence he received in the prior setting. Moreover, defendant was pulled out of the RDAP intensive drug treatment program for this resentencing, thereby interrupting a key component of his rehabilitative efforts. (Sent'g Tr. (DE 112) at 5).

As the Fourth Circuit debates the future of its Rogers/Singletary jurisprudence, a question has been raised about whether the remedy of plenary resentencing in fact benefits defendants. Specifically, a majority of active judges on the court of appeals recently remarked that "[o]ur Rogers-Singletary remedy – requiring that the most minor scrivener's error (or stray remark at sentencing) requires a full resentencing – burdens our district court in exchange for no perceptible benefits." United States v. McLaurin, 172 F.4th 356, 357, 361 & n.8 (4th Cir. 2026) (statement Richardson, J. respecting denial of rehearing en banc, joined by Diaz, C.J., and Wilkinson, Niemeyer, King, Agee, Quattlebaum, and Rushing, JJ.). These same judges noted "[i]t is unclear whether the current scheme helps defendants in the mine run of cases." Id. at 361 n.8.

Criminal sentencing is one of the most important aspects of the work of a federal district judge. Years and sometimes decades of a defendant's future are at stake in virtually every sentencing proceeding. The court takes the responsibility extremely seriously. In the court's experience, defendants benefit from dialogue with the court regarding the offense conduct and related sentencing factors, and, of equal importance, his or her plans for accepting responsibility and moving on with life either inside or outside of custody. That dialogue often entails discussion of the court's expectations for defendant's conduct on supervised release, and thus the supervised release conditions themselves.

The current practice of mining the sentencing transcript for any verbal missteps in the court's discussion of the conditions may encourage the sentencing court to forego this dialogue in favor of a preformed written set of conditions and explanation for same. See McLaurin, 172 F.4th at 361 n.8 (stating the current Rogers/Singletary jurisprudence "encourages district courts to map out the criminal judgment in advance of the sentencing hearing"). Concern has been expressed that this practice:

> encourages district courts to say less by way of helpful explanation to defendants at their sentencing hearings. . . . The solution for a district court seeking to avoid vacatur, therefore, is to read directly from a written judgment prepared ahead of time with no deviation or, safer still, to incorporate the conditions in the presentence report by reference, without even stating them aloud to the defendant. This approach incentivizes district courts to stick to "robotic incantations" instead of explaining supervised release conditions in a way that is more personal, and understandable, to the defendant.

United States v. Tostado, 171 F.4th 664, 672 (4th Cir. 2026) (Rushing, J. dissenting).

**CONCLUSION**

Based on the foregoing, the court determined that 167 months' imprisonment followed by three-years supervised release was a sentence that is sufficient, but not greater than necessary, to

accomplish the purposes of sentencing. The clerk is DIRECTED to supplement the record on appeal with a copy of this order.

DATED, this the 23rd day of June, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

12